**CITY OF WAHPETON, Plaintiff and Appellee,**

v.

**Kenneth SKOOG, Defendant and Appellant.**

**Crim. No. 707–A.**

Supreme Court of North Dakota.

Dec. 19, 1980.

Steven J. Lies, Wahpeton, for plaintiff and appellee; appearance on briefs only—no oral argument.

Johnson, Milloy, Johnson & Stokes, Wahpeton, for defendant and appellant; appearance on briefs only—no oral argument.

SAND, Justice.

This is an appeal on the merits of a case previously before this Court on the City of Wahpeton's [City] motion to dismiss. *City of Wahpeton v. Skoog*, 295 N.W.2d 313 (N.D. 1980). We held the City's motion to dismiss in abeyance and ordered Skoog to file a transcript of the proceedings at trial within 30 days. Skoog complied with this order and we now reach the merits of Skoog's appeal.

Skoog was convicted in Wahpeton municipal court of driving while under the influence of intoxicating liquor and appealed to the Richland County Court of Increased Jurisdiction.[1] Prior to trial in county court, Skoog filed a motion to suppress all "oral or tangible evidence, testimonial or communicated acts, or statements obtained directly or indirectly from the illegal arrest, detention or custody of Kenneth Skoog on August 27, 1979" because he was not advised of his constitutional rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

---

1. See § 40–18–19, North Dakota Century Code.

Skoog's motion was denied,[2] and after trial in Richland County court Skoog was convicted of the offense.

Skoog asserts that the trial court erred in not suppressing testimony concerning the field sobriety tests[3] because a *Miranda* warning was not given prior to the tests.

Skoog's assertion involves the Fifth Amendment privilege against self-incrimination. The Fifth Amendment provides in pertinent part as follows:

"No person ... shall be compelled in any Criminal Case to be a witness against himself ...."

In *Miranda v. Arizona, supra,* the Supreme Court spoke to the underlying policies supporting the privilege and stated:

"All these policies point to one overriding thought: the constitutional foundation underlying the privilege is the respect a government—state or federal—must accord to the dignity and integrity of its citizens. To maintain a 'fair state-individual balance,' to require the government 'to shoulder the entire load,' [citation omitted] to respect the inviolability of the human personality, our accusatory system of criminal justice demands that the government seeking to punish an individual produce the evidence against him by its own independent labors, rather than by the cruel, simple expedient of compelling it from his own mouth. *Chambers v. Florida,* 309 U.S. 227, 235–238, 60 S.Ct. 472 [476–477], 84 L.Ed. 716, 721, 722 (1940). In sum, the privilege is fulfilled only when the person is guaranteed the right 'to remain silent unless he chooses to speak in the unfettered exercise of his own will.'" *Miranda v. Arizona,* 384 U.S. 436, 460, 86 S.Ct. 1602, 1620, 16 L.Ed.2d 694, 715 (1950).

The *Miranda* court went on to hold that the prosecution may not use statements stemming from custodial interrogation of the defendant unless it can be shown that the defendant has been informed of his constitutional rights prior to being questioned. The *Miranda* warning requires that an accused person who is in custody must be advised, prior to the time that a statement is taken, that he has the right to remain silent, that any statement he does make may be used against him, and that he has the right to the presence of an attorney, and that an attorney will be provided for him if he cannot afford to hire one.

The scope of the term "statement" within the meaning of the Fifth Amendment was reviewed by the Supreme Court in *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). In *Schmerber,* the defendant was forced to submit to the withdrawal and chemical analysis of a blood sample to determine the alcohol level in his blood. The court held that the privilege against self-incrimination only protected the accused from being compelled to testify against himself or to otherwise provide the prosecution with evidence of a "testimonial or communicative" nature. The court went on to state:

"It is clear that the protection of the privilege reaches an accused's communications, whatever form they might take, and the compulsion of responses which are also communications, for example, compliance with a subpoena to produce one's papers. [Citation omitted.] On the other hand, both federal and state courts have usually held that it offers no protection against compulsion to submit to fingerprinting, photographing, or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture. The distinction which has emerged, often expressed in different ways, is that the privilege is a bar against compelling 'communications' or 'testimony,' but that compulsion which makes a

---

2. Skoog filed an appeal from the order denying the suppression motion, but a voluntary dismissal of that appeal was executed because the order denying the motion to suppress was not an appealable order.

3. The tests performed by Skoog were walking heel-to-toe on a red line, putting his finger to his nose, standing on one leg, and having his eyes observed after shining a flashlight in his eyes.

suspect or accused the source of 'real or physical evidence' does not violate it." *Schmerber v. California*, 384 U.S. 757, 763–764, 86 S.Ct. 1826, 1831–1832, 16 L.Ed.2d 908, 916 (1966).

Thus, the Supreme Court has distinguished between testimonial compulsion and compulsion which does not force the accused to be a witness against himself, but merely requires him to be the source of real or physical evidence. Testimonial compulsion is proscribed by the Fifth Amendment.

In light of *Schmerber* and *Miranda*, Skoog asserts that the field sobriety tests are testimonial or communicative in nature and not real or physical evidence, and therefore, a *Miranda* warning is required prior to the tests. We disagree.

This Court, in *Borman v. Tschida*, 171 N.W.2d 757 (N.D. 1969), has implied that no *Miranda* warning is necessary prior to field sobriety tests. In *Borman* we framed the issue as being whether or not a highway patrolman had reasonable grounds to believe Borman had been driving a motor vehicle upon the public highway while he was under the influence of intoxicating liquor. We found that the evidence supported the finding that the officer had reasonable cause to believe Borman was driving under the influence. We also offered the following:

"Should it be contended that because the patrolman did not give any of the warnings specified in *Miranda v. Arizona*, 384 U.S. 436, 80 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974 (1966), he could not use what he learned from the physical tests, i. e., finger-to-nose, heel-to-toe, etc., in determining reasonable cause, reference is made to *People v. Krueger, supra*, [99 Ill.App.2d 431] 241 N.E.2d [707] 710, [no error in admitting testimony of police officer as to results of sobriety tests given prior to *Miranda* warning] and to *City of Piqua v. Hinger*, 15 Ohio St.2d 110, 238 N.E.2d 766, 767–768, 44 Ohio 2d 81, cert. denied, 393 U.S. 1001, 89 S.Ct. 484, 21 L.Ed.2d 466 [evidence of physical tests conducted prior to time defendant was advised of his rights is admissible.]" 171 N.W.2d at 764.

The cases cited in the above quotation clearly support the proposition that roadside sobriety tests are real or physical evidence and are not protected by the constitutional privilege of self-incrimination. We now affirmatively accept what we implied in *Borman v. Tschida*.

Field sobriety tests are based on the relationship between intoxication and the loss of coordination which intoxication causes. These tests do not force the subject to betray his subjective knowledge through his communicative facilities. They only compel the suspect to exhibit his physical characteristics of coordination as a source of real or physical evidence which may be testified to by the officer observing the tests. They require the suspect "to stand, to assume a stance, to walk, or to make a gesture" within the purview of *Schmerber*. We note, as the *Schmerber* court did, that "[s]ome tests seemingly directed to obtain 'physical evidence,' for example, lie detector tests measuring changes in body function during interrogation, may actually be directed to eliciting responses which are essentially testimonial." In this instance, however, no such problem exists. Thus, we believe that field sobriety tests are physical and real evidence and do not activate the protections afforded by the Fifth Amendment.

Additionally, operating a motor vehicle on a public highway is a privilege. *State of North Dakota ex rel. Hjelle v. A Motor Vehicle Described as a 1973 Brockway Trailer*, 299 N.W.2d 557 (N.D. 1980). This privilege as of now has not been elevated to a constitutional right.

Accordingly, the decision of the Richland County court of increased jurisdiction is affirmed.

ERICKSTAD, C. J., and PAULSON, PEDERSON and VANDE WALLE, JJ., concur.