683 P.2d 335

**William Charles SWEITZER,
Plaintiff-Appellant,**

v.

**DEPARTMENT OF TRANSPORTATION,
MOTOR VEHICLE DIVISION, Juan
Martin, Assistant Director, Defendant-
Appellee.**

**No. 1 CA–CIV 6469.**

Court of Appeals of Arizona,
Division 1, Department A.

June 14, 1984.

Penrod & Zarzynski by Craig W. Penrod, Tempe, for plaintiff-appellant.

Robert K. Corbin, Atty. Gen. by Joe Acosta, Jr., Asst. Atty. Gen., Phoenix, for defendant-appellee.

OPINION

GRANT, Presiding Judge.

This appeal concerns the application of Arizona's Implied Consent Law. A.R.S.

§ 28–691.[1] Appellant, William Sweitzer, was arrested on July 28, 1980 for driving while under the influence of intoxicating liquor[2] and refused to submit to a breath test. After a hearing the Motor Vehicle Division, Arizona Department of Transportation, found appellant violated the Implied Consent Law by refusing to submit to a breath test and accordingly ordered a six month suspension of his driver's license. On statutory appeal the trial court affirmed the order of suspension. Sweitzer then timely appealed to this court.

The facts giving rise to this appeal are as follows. On July 28, 1980 Arizona Department of Public Safety Officer S. Mason, while traveling northbound on Interstate 17, observed an automobile weaving erratically. The car at one point almost hit a railroad overpass. The officer managed to stop the car. Officer Mason got out of his police car and approached Sweitzer, the driver of the vehicle in question, who had his head laid back on the headrest and his eyes barely open. The officer noticed a strong alcoholic odor on Sweitzer's breath, Sweitzer's speech was slurred and confused, and he was unsteady when he stood up and walked. Officer Mason placed Sweitzer under arrest for driving while intoxicated and transported him to a police sub-station.

At the sub-station the officer informed Sweitzer of the Implied Consent Law, including the fact that if he refused to submit to a breath test he would have his license suspended for six months. Sweitzer verbally stated that he did not wish to take the test.

Thereafter, the officer submitted a certified report of refusal to take a breath test to the Motor Vehicle Division. A hearing was held at which Officer Mason and Sweitzer both testified. The hearing officer found that all the elements of a refusal pursuant to A.R.S. § 28–691(E) were prov-

en and therefore ordered Sweitzer's license suspended for six months.

■ As of July 28, 1980 Arizona's Implied Consent Law provided:

A. Any person who operates a motor vehicle upon the public highways of this state shall be deemed to have given consent, subject to the provisions of § 28–692, to a chemical test or tests of his blood, breath, or urine for the purpose of determining the alcoholic content of his blood if arrested for any offense arising out of acts alleged to have been committed while the person was driving or in actual physical control of a motor vehicle while under the influence of intoxicating liquor. The test or tests shall be administered at the direction of a law enforcement officer having reasonable grounds to believe the person to have been driving or in actual physical control of a motor vehicle upon the public highways of this state while under the influence of intoxicating liquor. The law enforcement agency which such officer represents shall designate which of such tests shall be administered, however only the breath test shall be administered in all cases except where circumstances preclude its use.

\* \* \* \* \* \*

C. Any person who is dead, unconscious or who is otherwise in a condition rendering him incapable of refusal, shall be deemed not to have withdrawn the consent provided by subsection A and the test or tests may be administered, subject to the provisions of § 28–692.

D. If a person under arrest refuses to submit to a chemical test designated by the law enforcement agency as provided in subsection A, none shall be given. The department, upon the receipt of a report of the law enforcement officer, certified and subject to the penalty for

---

**1.** All citations to A.R.S. § 28–691 are to the version in effect on July 28, 1980. A.R.S. § 28–691 was amended subsequently in 1982.

**2.** At the time of the offense A.R.S. § 28–692(A) (amended 1982) provided:

It is unlawful and punishable as provided in § 28–692.01 for any person who is under the influence of intoxicating liquor to drive or be in actual physical control of any vehicle within this state.

perjury as prescribed by § 28–1062, that he had reasonable grounds to believe the arrested person had been driving or was in actual physical control of a motor vehicle upon the public highways of this state while under the influence of intoxicating liquor and that the person had refused to submit to the test, shall suspend for a period of six months his license or permit to drive, or any nonresident operating privilege....

A.R.S. § 28–691. Before one's license can be suspended for violation of the Implied Consent Law the following facts must be established: (1) the police officer had reasonable grounds to believe the respondent was driving while intoxicated; (2) the officer arrested the respondent; (3) the officer requested the respondent submit to a chemical test of intoxication; and (4) the officer warned the respondent that a refusal to submit to the chemical test will result in suspension of the driver's license. *Shope v. City Court*, 132 Ariz. 464, 646 P.2d 895 (App.1982).

Sweitzer argues that due to his voluntary intoxication he was incapable of refusing to submit to a breath test. Thus, it is argued that the officer should have administered an involuntary blood alcohol level test, such as a blood test, as provided in A.R.S. § 28–691.

█ In *Campbell v. Superior Court*, 106 Ariz. 542, 479 P.2d 685 (1971), our supreme court stated:

> [A] refusal to submit to the test occurs where the conduct of the arrested motorist is such that a reasonable person in the officer's position would be justified in believing that such motorist was capable of refusal and manifested an unwillingness to submit to the test.

106 Ariz. at 553, 479 P.2d at 696. We hold that a driver's voluntary intoxication is not a valid defense in a suspension hearing for refusal to submit to a chemical test for blood alcohol, unless the driver is unable to communicate a verbal or physical response to the officer's request.

█ A.R.S. § 28–691(C) indicates that persons who are "dead, unconscious or who

[are] otherwise in a condition rendering [them] incapable of refusal" cannot be held to have refused to submit to a chemical test pursuant to subsection D. In construing subsection C our primary goal is to ascertain and give effect to the legislature's intent. *National Union Fire Ins. Co. v. Rick*, 134 Ariz. 122, 654 P.2d 56 (App.1982). In respect to this duty we should consider the context of the statute, language used, the subject matter, the effects and consequences, and the purpose of the law. *State ex rel. Flournoy v. Mangum*, 113 Ariz. 151, 548 P.2d 1148 (1976).

Sweitzer points to the following evidence in support of his argument: appellant appeared "to be in a trance"; the officer did not give appellant any field sobriety tests due to the degree of intoxication; the officer noted in his report that the standard questions on the Alcohol Influence Report were not asked of appellant due to his intoxication; and appellant appeared confused.

Other evidence, however, readily supports the conclusion that Sweitzer could make volitional statements, movements and decisions. Sweitzer walked and stood on his own, although at times he needed support to stay on his feet. Sweitzer responded to questions, even stating he refused to submit to the breath test. There is simply no evidence that Sweitzer was unconscious or its equivalent.

█ Where general words follow the enumeration of particular classes, such words should be construed to apply only to things or persons of the same general nature. *Davis v. Hidden*, 124 Ariz. 546, 606 P.2d 36 (App.1979). We believe that consistent with the categories of the dead and the unconscious, to be in a condition rendering one incapable of refusal requires one to be unable to make volitional actions, omissions, or decisions. The driver must be unable to communicate verbally or physically respond to the officer.

█ The facts raise the issue, not of Sweitzer's capability of refusing, but of his ability to properly comprehend the signifi-

cance of the Implied Consent Law. In *Gaunt v. Motor Vehicle Division* 136 Ariz. 424, 666 P.2d 524 (App.1983), the court rejected an analogous argument stating:

One further argument by Gaunt is that he was so intoxicated that he could not comprehend how his *Miranda* rights related to the implied consent law and therefore he did not make a knowing and intelligent refusal. Regardless of the degree of voluntary intoxication or the lack of understanding resulting therefrom, when an arrested motorist refuses to take the test, he is subject to suspension of his license.... To accept Gaunt's defense would have the anomalous result that the greater the degree of intoxication of the motorist, the lesser the degree of his accountability.

*Id.* at 426, 666 P.2d at 526. The same reasoning and logic applies here. Sweitzer clearly manifested his unwillingness to submit to the test by his verbal refusal.

For the foregoing reasons we affirm.

CORCORAN and FROEB, JJ., concur.